NIESEN, Appellant, v. STATE, Respondent.

*October 30—November 28, 1967.*

For the appellant there was a brief by *Anderson, Bylsma & Eisenberg,* attorneys, and *William G. Rice* of counsel, all of Madison, and oral argument by *Mr. Rice.*

For the respondent the cause was argued by *Richard E. Barrett,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HANSEN, J. The trial judge entered judgment dismissing the action and in doing so supported his decision with a written memorandum decision and a supplemental memorandum decision. There is little doubt but what the plaintiff eventually benefited by the construction work of the state highway commission and that the state highway commission expended a considerable sum of money to provide this benefit to the plaintiff and that it now seems unjust to give the plaintiff a further award of damages.

Nevertheless, we find ourselves confronted with some uncontroverted facts coupled with the mandate of strict and specific statutory language. There is absolutely no doubt but what the 20-acre parcel was marshy land and not tillable prior to the summer of 1963. Then in 1963, the plaintiff constructed two north-south lateral ditches for drainage and the highway commission constructed

an east-west drainage ditch on its right-of-way so connected with the laterals that the parcel became tillable and the plaintiff did plow the land. The commission then decided the drainage ditch it had constructed constituted a highway hazard and closed off the ditch. Unfortunately, from the standpoint of the highway commission, before they could construct another drainage ditch in the spring of 1964, the land which they had made tillable in 1963, reverted to its previous marshy condition as a direct result of the highway commission having closed the drainage ditch it constructed in 1963.

As previously decided by this court, *Niesen v. State, supra*, sec. 88.38, Stats. 1963 is controlling in the instant case.

*Sec. 88.38, Stats. 1963:*

"**Culverts and outlets to permit natural drainage.** (1) Whenever any county, town, city, village, railway company or the state highway commission shall have heretofore constructed and now maintains or hereafter shall construct and maintain any public highway or road grade through, over and across any marsh, lowland or other natural depression over or through which surface water naturally flows and percolates, and the stopping of the said flow and percolation of said water by said highway or road grade cause any crop or land to be flooded, watersoaked or otherwise damaged, such county, town, city, village, railway company or the *state highway commission shall construct, provide and at all times maintain a sufficient ditch or ditches, culverts or other outlets to allow the free and unobstructed flow and percolation of said water from said lands, and to prevent said lands from becoming flooded, watersoaked or otherwise damaged by said water.* The foregoing shall not apply to public highways or road grades now or hereafter used to hold and retain water for cranberry purposes.

"(1m) Whenever any county, town, city, village, railway company or the state highway commission has heretofore constructed and now maintains or hereafter constructs and maintains any public highway or grade through, over and across any marsh, lowland or other natural depression over or through which surface water naturally flows and percolates, *and the method of design*

*in construction of said highway is such as to cause water to be artificially collected together in a manner and in quantities and in locations so essentially different from the conditions prevailing before such construction as to cause any of the lowland crop or land to be flooded, watersoaked or otherwise damaged under circumstances when such damage would not have occurred except for said manner of highway design and construction and maintenance,* such county, town, city, village, railway company or the *state highway commission shall construct, provide and at all times maintain a sufficient ditch or ditches, culverts or other outlets to allow the free and unobstructed flow and percolation of said water from said lands* or onto the highway right of way itself in places designed to receive and absorb said water, and *to prevent said lowlands from becoming flooded, watersoaked or otherwise damaged by said water as a result of said highway design, construction and maintenance.*

"(2) Any county, town, city, village or railway company which fails to provide such necessary ditches or culverts or other outlets, and the state, when the state highway commission fails to do so, shall be liable for all damages caused by reason of such failure or neglect. Claims for damages under this section shall be filed with the county, town, city, village, railway company or the state highway commission, which is responsible for the public highway or grade through which the claimants' claims arise. If such claim is not allowed within 90 days after filing thereof, the claimant shall have a right of action against the county, town, city, village or railway company which is responsible for the public highway or grade through which the claim arises, and the state, when the state highway commission is responsible for the public highway or grade through which the claim arises. *Such action shall be commenced in a court of record within 3 years of the time of the alleged damages in the county wherein the damages occurred.* An action on any claim against the state for damages under this section may be commenced as provided in s. 285.01; but disallowance of the claim by the legislature shall not be necessary or a prerequisite to the commencement or prosecution of such action. No bond for security for payment of costs shall be required of the claimant and ss. 15.94 and 16.53 shall not apply. Amounts awarded or recovered as damages against the state under this section shall be deemed

a purpose referred to and shall be charged to and the state highway commission is authorized to pay such amounts out of the allotment provided in s. 20.420 (82)." (Emphasis added.)

The language of this statute, although admittedly placing great demands upon the highway commission, is clear and unequivocal. The statutory language provides that it (highway commission) shall construct, provide and "at all times maintain" a sufficient ditch to allow the free and unobstructed flow of water so as to prevent lowlands from being flooded, water-soaked or otherwise damaged by water as a result of the highway design, construction and maintenance.

It is deemed significant that the legislature recognized the harsh language of this statute and the almost impossible burden it placed upon governmental units under the modern methods of highway construction and the 1963 legislature repealed sec. 88.38, Stats. 1963, and recreated it as a part of sec. 88.87, Stats. 1965 by the enactment of ch. 572, Laws of 1963, which became effective on June 13, 1964. The new statute (sec. 88.87) in effect, establishes the requirement that sound engineering practices be employed in highway construction and that the flow of surface or stream water not be impeded in any unreasonable manner so as to cause any unnecessary accumulation of water.

The report of the Wisconsin Legislative Council in regard to the revision of sec. 88.38, Stats., well states the necessity and reason for the statutory change:

*Legislative Council—1963 Report, vol. 1*

"This section is a consolidation and revision of secs. 88.38 and 88.40. It makes several changes in the law. *It recognizes that, under modern methods of highway construction, it is impossible to maintain the free and unobstructed flow and percolation of water as required by present sec. 88.38. It therefore substitutes the requirement that sound engineering practices be employed and*

*that the flow of surface or stream water not be impeded in any unreasonable manner so as to cause any unnecessary accumulation of water.* It repeals the provisions which, under sec. 88.38 (1), gave the landowner *a right to* bring repeated actions for damages for flooding or water-soaking of lands located on the upper side of the highway and, under s. 88.38 (1m), for flooding or water-soaking lands located on the lower side of the highway. Instead, the landowner will be required either to sue for *equitable* relief or to bring an action of inverse condemnation to recover compensation for the taking of the land by flooding or water-soaking. The section also imposes a duty upon the landowner to refrain from impeding or diverting surface or stream water in such a way as to cause damage to or flooding of highways. The present section only imposes duties upon the highway authorities and fails to impose any such correlative duty upon landowners." (Emphasis added.)

We also conclude that the cause of action of the plaintiff is not barred by the three year statute of limitation in sec. 88.38 (2), Stats., *supra.* It was in the late summer of 1963 that the highway commission constructed the drainage ditch that changed plaintiff's land from marsh land to tillable land. It was the decision of the highway commission that the construction of the ditch created a highway hazard, and it is the subsequent closing of the ditch in the fall of 1963 that caused the plaintiff's land to revert to its former marshy condition in the spring of 1964 before the highway commission was able to construct the new drainage on the limited highway easement it had acquired. The instant action was commenced by service of a summons and complaint on April 21, 1965, well within the three year statute of limitation.

The parties have previously stipulated that in the event the plaintiff were to recover, damages would be in the amount of $1,705.90.

*By the Court.*—Judgment reversed and cause remanded with directions to enter judgment pursuant to this opinion.